**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gabriel Gaona, | No. CV 12-8211-PCT-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| US Investigations Services Professional Services Division, Inc., Jean Hicks, | |
| Defendants. | |

Pending before the Court are Defendants motions to dismiss. The first motion is to substitute US Investigations Service, LLC ("USIS") for US Investigations Services, Professional Services Division Inc. ("USIS PSD"). Plaintiff does not oppose this motion.

The second motion seeks to dismiss USIS and Hicks under Federal Rule of Civil Procedure 12(b)(6). Defendants bring this motion based on four theories: 1) statute of limitations; 2) immunity; 3) preemption; and 4) lack of exhaustion. Alternatively, if the case is not dismissed on any of these four theories, Defendants move to dismiss the negligence claim arguing it fails to state a claim as a matter of state tort law.

In their filings, both parties address the statute of limitations theory first. However, "[i]nquiring whether the court has jurisdiction is a federal judge's first duty in every case." *Belleville Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 693 (7th Cir. 2003).

In this case, Defendants' second, third and fourth arguments as to why they should be

1 dismissed are based on federal law. The complaint in this case alleges only state law causes 2 of action (defamation and negligence) and Defendants do not argue that the parties are 3 diverse. Thus, the federal defenses are the basis for removal in this case. *See* Doc. 1. As a 4 result, if the Court concludes the federal defenses are not meritorious, this Court may lack 5 subject matter jurisdiction over this case. Accordingly, the Court will consider all of the 6 federal defense before the state law defenses.

**I.   Factual Background**

Plaintiff worked as a security guard at Glen Canyon Dam. Glen Canyon Dam is operated by the United States Department of the Interior, Bureau of Reclamation. As part of his employment, Plaintiff completed a background check to determine whether he was suitable to be an armed security guard.

Glen Canyon Dam, through the United States, contracted with USIS to perform this background check. Defendant Hicks, an investigator with USIS, performed the background check of Plaintiff. Plaintiff was terminated from his position as an armed security guard at Glen Canyon Dam as a result of this background check.

Plaintiff was advised that he failed his background check on April 23, 2010. Plaintiff sought a copy of his background check under the Freedom of Information Act, and received that copy on June 10, 2010. In 2011, Plaintiff sued Shawn Stice and the City of Page for defamation based on the allegedly defamatory statements made to the background investigator, which appeared in Plaintiff's background check and caused him to fail his background check. On April 20, 2012, Plaintiff received an initial disclosure in his defamation suit in which Defendant Stice and the City of Page denied ever making the statements that were in the background check. On October 18, 2012, Plaintiff filed this suit against the company and person who performed the background check for defamation and negligence, essentially alleging that Ms. Hicks fabricated the information in the background check that caused Plaintiff to fail.

## II. Federal Defenses

### A. Immunity

Defendants argue that,

> Government contractors are immune from tort liability arising as a result of their "compliance with the specifications of a federal government contract." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011). This allows the government contractor to "receive the benefits of sovereign immunity" when it complies with the contract. *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1000 (9th Cir. 2007).
>
> Government contractors are immune from liability where the subject matter of the contract involves "uniquely federal interests," and there is a significant conflict "between an identifiable federal policy or interest and the operation of state law, or the application of state law [that] would frustrate specific objectives of federal legislation." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504, 507 (1988) (internal quotations omitted).

Doc. 4 at 5.

The Ninth Circuit Court of Appeals has summarized the government contract defense as shielding, "contractors from tort liability in state or federal actions where plaintiffs allege they sustained injuries as a result of exposure to defective products or equipment manufactured or supplied under a government contract." *Rodriguez v. Lockheed Martin Corp.*, 627 F.3d 1259, 1265 (9th Cir. 2010). The Court of Appeals further stated, "[a]lthough [the Supreme Court's decision in] *Boyle* was limited to design defects, we have held that the government contractor defense also applies to actions involving manufacturing defects." *Id.* (citing *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 749 n. 3 (9th Cir.1997)). The Court of Appeals also explained, [a]lthough the source of the government contractor defense is the United States' sovereign immunity, we have explicitly stated that 'the government contractor defense does not confer sovereign immunity on contractors.'" *Id.* (quoting *United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1147 (9th Cir. 2004)).

Finally, the Court of Appeals explained that for a contractor to receive this "corollary financial benefit flowing from *the government's* sovereign immunity," the contractor must show, "(1) the United States set forth "reasonably precise specifications"; (2) "the equipment conformed to those specifications"; and (3) the supplier provided the United States with

- 3 -

adequate warnings of the dangers." *Id.* at 1266 (quoting *Boyle*, 487 U.S. at 512). In this case, Defendants argue that as long as they: (1) meet the specifications of the government contract and (2) that the contract is for a uniquely federal interest, they are entitled to the government contractor defense. However, Defendants' premise is far from clear in the Ninth Circuit.

For example, the Third Circuit in extending the government contractor defense to all procurement contracts, not just military procurement contracts, noted that they were disagreeing with the Ninth Circuit. *Carley v. Wheeled Coach*, 991 F.2d 1117, 1124 (3rd Cir. 1993). In other words, the Third Circuit Court of Appeals noted that the Ninth Circuit limits the government contract defense to only military procurement contracts. *Id.* Specifically, the Third Circuit Court of Appeals stated:

> Our holding conflicts with the law of the Ninth Circuit, which limits the government contractor defense to military contractors. *See In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 810-12 (9th Cir.1992); *Nielsen v. George Diamond Vogel Paint Co.*, 892 F.2d 1450, 1452-55 (9th Cir.1990). In *Nielsen*, the court focused on language in *Boyle* stating that the unique federal interest inherent in all procurement contracts is a necessary, but not sufficient, condition for displacement of state law. 892 F.2d at 1454 (citing *Boyle*, 487 U.S. at 507). The court reasoned that the government contractor defense should be limited to military procurements because *Boyle* focused its analysis on military concerns, *id.* at 1454, and because applying state law to civilian procurements would not cause a significant enough conflict with federal policy to justify displacement of state law, *id.* at 1455.
>
> In *In re Hawaii Federal Asbestos Cases*, the same court further argued that the Supreme Court's disapproval of a government contractor defense for procurements of stock helicopters by model number and of "any standard equipment" indicates that the defense should not apply to products readily available on the commercial market. 960 F.2d at 811 (quoting *Boyle*, 487 U.S. at 509, 510). The court stated that nonmilitary products do not involve the same highly complex and sensitive decisions as military products, but instead are manufactured in response to the broader needs and desires of private purchasers and already will have the costs of ordinary tort liability factored into their price. *Id.*

*Id.* at 1124-25.

In attempting to discern the scope of the government contract defense in the Ninth Circuit, another district court Judge stated as follows:

> Because the Court finds the lack of reasonable precise specifications precludes application of the government contractor defense, the Court need not determine the precise boundaries of the defense as defined by the Ninth

- 4 -

> Circuit. Since *Boyle*, the Courts of Appeals have varied greatly in their range of application of the defense. *See generally* Hazel Glenn Beh, *The Government Contractor Defense: When Do Governmental Interests Justify Excusing A Manufacturer's Liability for Defective Products?*, 28 Seton Hall L.Rev. 430, 451-55 (1997) (summarizing the various applications of the defense in other Circuits, while emphasizing the limitations of the defense in the Ninth Circuit to contracts dealing with military equipment and resources). The Ninth Circuit seems to limit the application of the defense to contracts involving specifications for the design or production of military equipment or operation of military facilities. *See In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 811 (9th Cir.1992) ("That *Boyle* speaks of the military contractor defense as immunizing contractors only with respect to the military equipment they produce for the United States is consistent with the purposes the Court ascribes to that defense."); *In re Hanford Nuclear Reservation Litigation*, 534 F.3d 986, 1000 (9th Cir.2008) ("[T]he government contractor defense applies not only to claims challenging the physical design of a military product, but also to the process by which such equipment is produced."). However, the Ninth Circuit also cites to *Yearsley* with approval, which did not involve a contract with the military. *See McKay*, 704 F.2d at 448 (citing to *Yearsley* as the first case to articulate the government contractor defense, which "protects a government contractor from liability for acts done by him while complying with government specifications during execution of performance of a contract with the United States").

*Griffin v. JTSI, Inc.*, 654 F.Supp.2d 1122, 1137, n. 30 (D. Hawaii 2008).

Following the reasoning of the Ninth Circuit cases, it is unlikely that *Boyle* lends any support to applying the government contractor defense in this case, which involves neither the military, nor a procurement contract.[1] Thus, *Yearsley* would be the source for extending

---

[1] Similarly, a district court in California held that the government contractor defense identified in *Boyle* is limited to military procurement contracts with the government. *Gomez v. Campbell-Ewald Co*, 2013 WL 655237, *5 (C.D. Cal. Feb. 22, 2013). The district court stated:

> [The party's] reliance on *Boyle* and *In re Hawaii* is misplaced. In fact, the Ninth Circuit could not have been more explicit in *In re Hawaii* that the military contractor defense outlined in *Boyle* applies to the specific situation in which a contractor produces military equipment for the Government. [footnote omitted] "The *Boyle* Court repeatedly described the military contractor defense in terms limiting it to those who supply military equipment to the government." *In re Hawaii*, 960 F.2d at 810 (citing *Boyle*, 487 U.S. at 512)). "The fact that the military may order such products does not make them 'military equipment.' " *Id.* at 811. Rather, the limitation of liability "only with respect to the military equipment they produce for the United States is consistent with the purposes the Court ascribes to that defense" and that those "same concerns do not exist in respect to products readily available on the commercial market." *Id.* at 811.

- 5 -

the government contract defense in this circumstance. However, in *Boyle*, the Supreme Court noted that while *Yearsley* hinted at a government contract defense, it did not establish such a defense. Specifically, the Supreme Court stated:

> [An] area that we have found to be of peculiarly federal concern, warranting the displacement of state law, is the civil liability of federal officials for actions taken in the course of their duty. We have held in many contexts that the scope of that liability is controlled by federal law. The present case involves an independent contractor performing its obligation under a procurement contract, rather than an official performing his duty as a federal employee, but there is obviously implicated the same interest in getting the Government's work done. [Footnote omitted]
>
> We think the reasons for considering these closely related areas to be of "uniquely federal" interest apply as well to the civil liabilities arising out of the performance of federal procurement contracts. We have come close to holding as much. In *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), we rejected an attempt by a landowner to hold a construction contractor liable under state law for the erosion of 95 acres caused by the contractor's work in constructing dikes for the Government. We said that "if [the] authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." *Id.*, at 20-21. The federal interest justifying this holding surely exists as much in procurement contracts as in performance contracts; we see no basis for a distinction.

*Boyle*, 487 U.S. at 505-06 (some internal citations omitted).

Thus, this Court must decide whether *Yearsley* created a government contract defense that would extend in this Circuit beyond the limits of *Boyle* — i.e. military procurement contracts. Before *Boyle* was decided, in *McKay v. Rockwell Intern. Corp.*, 704 F.2d 444, 448 (9th Cir. 1983), the Ninth Circuit Court of Appeals discussed the limits of the holding of *Yearsley*. The Court of Appeals stated, "[w]hile the government contractor defense covered at first only construction projects [based on *Yearsley*], it has recently been applied by several courts to military equipment design defect cases." *Id*. The Court of Appeals then went on to discuss the holdings of various courts around the country that had expanded the government contractor defense to military procurement contracts; these cases appear to be the precursor to *Boyle*. Importantly, the Court of Appeals seemed to treat the expansion of the government contractor defense beyond construction projects to military procurement

---

*Id.* at *5.

- 6 -

1  contracts as a very limited extension of *Yearsley*; rather than, as Defendants would have it,
2  an invitation for every private contractor who does work for the federal government to claim
3  it too receives the benefit of the government's sovereign immunity.

4  This Court agrees with the *Griffen* court, as quoted above, that is seems unlikely given
5  how narrow the holdings in *In re Hawaii Federal Asbestos Cases* and *In re Hanford Nuclear*
6  *Reservation Litigation* were, that the government contractor defense in this circuit extends
7  beyond government construction contracts and military procurement contracts.[2] *Griffin*, 654
8  F.Supp.2d at 1137, n. 30.  Further, after *Griffen* was decided in 2008, the Ninth Circuit Court
9  of Appeal decided *Rodriguez*, which too limited the defense to military procurement
10 contracts. 627 F.3d at 1265.

11 Thus, this Court concludes that the military contract defense does not extent to every
12 private contractor who does work for the federal government.  Because this case does not
13 involve a construction project or a military equipment procurement contract, the defense is
14 not available to Defendants.[3]  Thus, Defendants' motion to dismiss based on immunity is
15 denied.

16 This conclusion is further supported because the test for when the defense is available
17 has no applicability in this case.  First, there is no product at issue in this case.  Therefore,

---

[2] Ultimately the *Griffen* court did not have to reach a conclusion about the scope of the government contractor defense.  In *Griffin*, the defendant who sought the benefit of the government contract defense provided security services (including monitoring security cameras, access control, and issuing clearance badges) at a visitor center at a U.S. military location.  *Griffin*, 654 F.Supp.2d at 1125.  The plaintiffs in *Griffen* both worked for the defendant security company.  *Id.* at 1125-26.  The plaintiffs alleged that they were terminated for reporting security violations in violation of Hawaii's Whistlebolwers' Protection Act.  *Id* at 1130.  While questioning whether the government contract defense is even available under such circumstances, as discussed above, the court ultimately concluded that the defendants could not avail themselves of the defense because no "reasonably precise specifications" existed.  *Id.* at 1136.

[3] *But see Gomez*, 2013 WL 655237, *5-6 (after concluding *Boyle* was limited to military procurement contracts, held that under *Yearsley* the government contractor defense barred suit against a private company that did advertising for the Navy allegedly in violation of the Telephone Consumer Protection Act.)

there were no precise specifications for the product. Second, there is no evidence that the "equipment" complied with the specifications. Finally, there is no evidence that the supplier provided "warnings" regarding the product.

Instead of applying the test for the government contractor defense as articulated in *Rodriguez* and other cases, Defendants argue that they are performing a function that is a "uniquely federal interest" and that the code of federal regulations and certain Executive Orders provide "specifications" for background checks. Defendants conclude that as long as their function is uniquely federal and done consistent with the specifications of the code of federal regulations and Executive Orders, they are entitled to the defense. Defendants have cited no law supporting such a "test" for applying a government contractor defense.

Further, even if the case law could be expanded to include companies performing background checks within the ambit of defendants who can seek the government contractor defense, the "specifications" referenced in this case are inadequate. As the *Griffen* court noted,

> The first requirement for application of the government contractor defense is the existence of reasonably precise specifications which are approved by the government. There must be a back and forth dialogue culminating in approval, and a continuous exchange between the contractor and the government in order to satisfy *Boyle's* first condition.

*Id.* at 1138 (internal citations and quotations omitted).

Here, what Defendants cite to in support of the "reasonable precise specifications" governing the background checks they perform for the government is the code of federal regulations and certain Executive Orders. *See Boyle*, 487 U.S. at 512 (requiring reasonably precise specifications). The code and the Executive Orders do not qualify as a "back and forth" dialogue between the contractor and the government, nor do they qualify as a "continuous exchange" between the contractor and the government. *See Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 585 (9th Cir. 1996) (requiring a back and forth dialogue followed by a continuous exchange between the government and the contractor). Accordingly, even if Defendants are correct that the government contractor defense is available generally to private contractors performing background checks, the facts of this

case do not qualify Defendants for the defense. Thus, the motion to dismiss based on immunity is denied for this alternative reason.

### B. Preemption

Next, Defendants argue that Plaintiff cannot allege state law causes of action because those claims are impliedly preempted by federal law. *See* Doc. 4 at 9. "Field and conflict preemption are subcategories of implied preemption." *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1230 (9th Cir. 2013). "Regardless of the type of preemption involved — express, field, or conflict — 'the purposes of Congress is the ultimate touchstone of pre-emtion analysis.'" *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1003 (9th Cir. 2013) (quoting *Cipollone v. Liggett*, 505 U.S. 504, 516 (1992)).

#### 1. Field Preemption

"Under field preemption, preemption is implied when Congress so thoroughly occupies a legislative field, that it effectively leaves no room for states to regulate conduct in that field." *Whistler Investments, Inc. v. Depository Trust and Clearing Corp.*, 539 F.3d 1159, 1164 (9th Cir. 2008) (internal quotations and citation omitted). Defendants' argument on field preemption is two sentences. The first sentence is, "Plaintiff's claims are impliedly preempted by federal law because the law governing the conduct of federal background investigations 'leaves no room for states to regulate,' and because state law 'poses an obstacle' to the federal law's 'purpose and intended effects.'" Doc. 4 at 9 (quoting *Whistler*, 539 F.3d at 1164). Defendants then state, "As noted above, background investigations are governed by a comprehensive set of laws, regulations, procedures and Executive Orders evincing a complete occupation of the field." Doc. 4 at 9. Defendants do not expand this argument in their reply.

No argument can be made that Congress has preempted the field of background checks. Thus, the question is whether Congress has preempted the field of federal background checks.

On this record, Defendants have presented no evidence that there are no federal agencies that conduct background checks differently, or less or more throughly, than the

- 9 -

1 guidelines they are following. Further, they have presented no evidence regarding whether 2 the types of background checks they are conducting are limited to prospective employees 3 holding positions that implicate a national security concern. If the category of federal 4 employees were so limited, Defendants would be arguing an even smaller category of field 5 preemption. Regardless, however, despite the fact that various federal sources have set 6 standards and guidelines for conducting background checks, Defendants have not shown an 7 intent by Congress to occupy the entire field of background checks such that state law torts 8 would be preempted.[4] Accordingly, the motion to dismiss based on field preemption is 9 denied.[5]

## 2. Conflict Preemption

"Conflict preemption exists when a state requirement actually conflicts with a federal requirement, making impossible compliance with both requirements, or when a state requirement stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Stengel*, 704 F.3d at 1231 (internal citations omitted). On this point, Defendants argue: "In addition, for the reasons set forth above in connection with immunity, the operation of state tort law conflicts with the federal interests protected. *See NASA*, 131 S. Ct. at 759 ('The Government has a strong interest in conducting basic

---

[4] Indeed, several of the sources cited by Defendants for how "Congress" has occupied this field are Executive Orders. Doc. 4 at 7. The Court does not see how orders of the President evidence Congress' intent to occupy a field. *See Arizona v. United States*, 132 S.Ct. 2492, 2524 (2012) (Alito, J. concurring) ("The United States' argument that § 2(B) is pre-empted, not by any federal statute or regulation, but simply by the Executive's current enforcement policy is an astounding assertion of federal executive power that the Court rightly rejects.")

[5] In *Gilstrap*, in the context of discussing FAA preemption of state law torts, the Court of Appeals concluded that the FAA's field preemption of various components of the airline industry resulted in preemption of the state law standards of care, but not the state law remedies. 709 F.3d at 1006. In this case, such a distinction might result in Plaintiff being able to sued for negligence, but the standard of care for negligence would be the various federal directives regarding how background checks must be conducted. However, neither party argued this distinction, and the Court need not reach it because the Court has not found field preemption.

- 10 -

1 background checks into the contract employees minding the store.').)" Doc. 4 at 9. This
2 quote is Defendants' entire argument from the motion addressing conflict preemption.
3 Defendants do not expand this argument in their reply.

4       To address this "argument" the Court must extract from this quote Defendants' theory
5 of conflict preemption. First, the federal requirements for doing background checks certainly
6 do not require Defendants to defame the person being investigated in the process; thus, it is
7 not impossible to comply with both the state law and the federal law on this point. Further,
8 nothing in the federal law requires that the background checks be conducted negligently. So,
9 again, it is not impossible to comply with both laws. Accordingly, an actual conflict with
10 state law does not exist which would make compliance with both state and federal law
11 impossible.

12       Second, the Court must consider whether the state requirements are an obstacle to
13 accomplishing the full purpose and objectives of Congress. This is a closer question than the
14 first. Certainly, the Court could hypothesize that Congress intended to allow the unimpeded
15 collection of information in background checks. However, there is no evidence in this record
16 as to the actual intent of Congress. *See Gilstrap*, 709 F.3d at 1003 (noting the touchstone of
17 the analysis is the intent of Congress).

18       Additionally, even if the Court presumes that Congress's objective was to allow the
19 collection of information, this case does not directly impact this objective. Specifically,
20 accomplishing this objective would involve considering whether the person <u>providing</u> the
21 background information should be subject to suit. Here, it is the person <u>receiving</u> the
22 background information who is being sued. Plaintiff alleges that in receiving the
23 information, Defendant Hicks either negligently or intentionally misstated the interviews
24 with third-parties causing Plaintiff to fail his background check. The Court cannot see how
25 allowing the person who is collecting the information to be completely unaccountable for the
26 accuracy of the information collected would further the goal of unimpeded collection of
27 information. In other words, no one alleges the goal of Congress was to have inaccurate and
28 unreliable background checks. Therefore, the Court finds there is no conflict preemption

with state law in allowing the person collecting the information to be sued. Accordingly, Defendants' motion to dismiss based on conflict preemption is denied.

### C. Exhaustion

Next Defendants argue that this case should be dismissed because Plaintiff failed to exhaust his administrative remedies. Specifically, Defendants state:

> Where relief is available from an administrative agency, "the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Cabaccang v. U.S. Citizenship & Immigration Servs.*, 627 F.3d 1313, 1316 (9th Cir. 2010) (internal quotation marks and citation omitted).

Doc. 4 at 10.

In this case, Defendants assert that after Plaintiff was terminated from his job due to his failure to pass his background check, he could have appealed to the Merit Systems Protection Board. *Id.* at 10. Based on Plaintiff's failure to allege exhaustion in his complaint, Defendants argue this case should be dismissed. *Id.* ("[Plaintiff] does not aver that he took any action to have the OPM or another federal agency (such as the Bureau) review the adverse determination.").

First, generally in this Circuit, failure to exhaust is an affirmative defense. *Wyatt v. Terhune*, 315 F.3d 1108, 1113 (9th Cir. 2003). Thus, Plaintiff's failure to "aver" exhaustion would not be a basis for dismissal under Federal Rule of Civil Procedure 12(b)(6).

Second, Defendants' legal argument is inconsistent with the facts of this case. Plaintiff could not have obtained any "relief" from Defendants by pursuing administrative remedies. Because Plaintiff could not receive a remedy against these Defendants by exhaustion, the Court finds that the exhaustion cases are inapplicable to this case. Accordingly, Defendants motion to dismiss based on exhaustion is denied.

### III. Jurisdiction

Although Plaintiff opposes all of Defendants' theories for why this case should be dismissed, Plaintiff did not move to remand this case, nor oppose Defendants' arguments for why this Court had jurisdiction. Nonetheless, this Court must independently evaluate its jurisdiction. *See Belleville Catering*, 350 F.3d at 693.

As discussed above, Defendants premise their assertion of federal subject matter jurisdiction on their defenses in this case. Specifically, Defendants assert:

> Under [28 U.S.C. §] 1442(a)(1), removal is proper *(i)* if the Defendants are "persons acting under the direction of a federal officer," *(ii)* there is "a causal nexus between [the Defendants'] actions, taken pursuant to a federal officer's directions, and Plaintiff's claims," and *(iii)* the Defendants can assert a "colorable federal defense." *Lombardi v. TriWest Healthcare Alliance Corp.*, No. 08-CV-02301-FJM, 2009 WL 1212170, at *1 (D. Ariz. May 4, 2009) (quotations omitted) (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)).

Doc. 1 at 2.

Although the Court has decided that Defendants' federal defenses are not meritorious, neither party has briefed whether they are "colorable" sufficient to confer subject matter jurisdiction on this Court. However, because Plaintiff has not moved to remand, the Court has presumed that Plaintiff concedes that Defendants' defenses are sufficiently colorable to confer jurisdiction on this Court.

Further, this Court must, "interpret section 1442 broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). Broadly construing a federal officer or agent's right to remove under § 1442, the Court finds Defendants' defenses are colorable sufficient to give this Court subject matter jurisdiction over this case.

**IV.  State Law Defenses**

**A.  Statute of Limitations**

Defendants move to dismiss arguing that Plaintiff's claims are barred by the statute of limitations. Defendants argue that the statute of limitations for Plaintiff's defamation claim is found in A.R.S. § 12-541, and is one year. Defendants argue that the statute of limitations for Plaintiff's negligence claims is found in A.R.S. § 12-542, and is two years. Defendants argue that Plaintiff's claims in this case accrued either upon his termination on April 23, 2010, or when Plaintiff received the response to his Freedom of Information Act ("FOIA") request, which revealed the contents of his background check, on June 17, 2010. Defendants then conclude that regardless of which accrual date the Court uses, this lawsuit which was filed on August 29, 2012, is outside both statutes of limitations.

- 13 -

1    Plaintiff responds and argues that both statutes of limitations are subject to tolling.
2 Plaintiff states that upon receiving the response to his FOIA request, he filed suit against
3 Shawn Stice and the City of Page for the allegedly defamatory statements Mr. Stice made in
4 Plaintiff's background check. Plaintiff then argues that it was only when Mr. Stice filed his
5 disclosure statement in the underlying lawsuit that Plaintiff learned that Mr. Stice denied
6 making the statements that Defendant Hicks recorded in the background check. Plaintiff then
7 argues that it was only upon receiving this disclosure statement in April 2012 that he learned
8 that Defendant Hicks had either negligently or intentionally mis-recounted Mr. Stice's
9 statements; thereby causing Plaintiff to fail his background check. Accordingly, Plaintiff
10 argues that the statute of limitations was tolled until he discovered Defendant Hicks' true
11 activity in April 2012. Plaintiff then concludes that this case, which again was filed on
12 August 29, 2012, is within both statutes of limitations.

### 1.    Defamation

14    In 1980, the Arizona Court of Appeals held that "An action for defamation accrues
15 and the Statute of Limitations begins to run upon publication." *Lim v. Superior Court In and*
16 *For Pima County*, 616 P.2d 941, 942 (Ariz. App. 1980). The Court went on to conclude,
17 "The Statute[] of Limitations is not tolled in a defamation action where the plaintiff is unable
18 to learn the identity of the alleged defamer." *Id*. at 943. In 1983, the Court explained that
19 the statute of limitations could be tolled when the statement is concealed; specifically when
20 the, "defamatory statement is 'published in a manner in which it is peculiarly likely to be
21 concealed from the plaintiff, such as in a confidential memorandum or a credit report.'" *Dube*
22 *v. Likins* 167 P.3d 93, 109, ¶6 (Ariz. App. 2007) (quoting *Clark v. AiResearch Manuf. Co.*
23 *of Ariz.*, 673 P.2d 984, 986 (Ariz. App. 1983)).

24    In 2007, the Court determined that the discovery rule in defamation cases is no
25 different than the discovery rule in other types of cases. *Id*. at 423, ¶10 ("We conclude that
26 the difference between the current interpretation of the common law discovery rule as applied
27 to defamation cases and as applied to other cases is more semantic than substantive."). The
28 Court then stated that the common law discovery rule is whether the plaintiff knew or should

have known of the underlying facts of the action. *Id.*

Defendants argue that the statute of limitations is not subject to tolling relying on only the 1980 case (and cases from other states). Given the evolution of the case law in Arizona, this Court will rely on the 2007 pronouncement of when the discovery rule is available in defamation cases.

Thus, the issue in this case is whether Plaintiff's "discovery" is based on when he learned of the allegedly defamatory statements, or when he learned of the identity of the maker of the statements. The "discovery" rule in Arizona is based on when Plaintiff learned of the "underlying facts" giving rise to the action. Here, it is undisputed that Plaintiff learned of the underlying facts when he received the response to his FOIA request on June 17, 2010. Based on this discovery of the facts, Plaintiff could have sued all relevant parties as of June 17, 2010. Because Plaintiff chose to assume Mr. Stice was at fault, does not change that he had the facts that implicated Defendant Hicks at the same time. Accordingly, Plaintiff's complaint filed on August 29, 2012 is beyond the one year statute of limitations for filing a defamation complaint and will be dismissed on this basis.

### 2. Negligence

In discussing cases arising under A.R.S. § 12-542, another Judge in this district has summarized Arizona law as follows:

> Such cases must be filed "within two years after the cause of action accrues." *Id.* A cause of action accrues once "the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998). A written report from a defendant informing a plaintiff of the facts that give rise to damages constitutes the accrual of a cause of action. *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A.*, 7 P.3d 979, 982 (Ariz. App. 2000).

*Everson v. Everson*, 2011 WL 4801884, *5 (D. Ariz. 2011).

Thus, like the law governing defamation claims, the test for when a negligence claim arises is when the plaintiff knew or should have known of the "facts underlying" his claim. *Id.* The facts of how Plaintiff came to know of his negligence claim are the same as how he learned of his defamation claim. As discussed above, Plaintiff learned the facts underlying his negligence claim on June 17, 2010, when he received the response to his FOIA request.

- 15 -

Accordingly, Plaintiff's complaint, filed on August 29, 2012, is outside the two year statute of limitations. As a result, Defendants' motion to dismiss this claim will also be granted.

### B. Duty

Alternatively, Defendants move to dismiss the negligence claim arguing they had no duty to Plaintiff. Because the Court will grant the motion to dismiss all claims based on statute of limitations, the Court need not reach this argument.

### V. Conclusion

Based on the foregoing,

**IT IS ORDERED** that the Motion to Dismiss US Investigations Services, Professional Services Division, Inc. and substitute US Investigations Services, LLC as a defendant in its place (Doc. 3) is granted. US Investigations Services, LLC is substituted in place of the dismissed US Investigations Services, Professional Services Division, Inc.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss (Doc. 4) is granted, based on statute of limitations only, and the Clerk of the Court shall enter judgment accordingly.

DATED this 23rd day of April, 2013.

James A. Teilborg
Senior United States District Judge